UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD DODD, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD MEDICAL INC, et al., <br><br> Defendants. | CAUSE NO. 3:19CV299-PPS/MGG |

OPINION AND ORDER

Richard Dodd, a prisoner without a lawyer, filed a motion for leave to amend along with a proposed amended complaint. ECF 59, 59-1. Dodd seeks to amend his original complaint by adding new claims and new defendants to his case. A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In his amended complaint, Dodd states he has a rare genetic autoimmune disorder—ankylosing spondylitis—that makes him more prone to inflammatory diseases affecting his spine, ribs, hips, shoulders, and joints. ECF 59-1 at 11. He explains that one common complication of ankylosing spondylitis is iritis, an inflammation of

the eyes, which makes his eyes painful and sensitive to light, and causes blurry vision. *Id*. Dodd states iritis requires immediate medical attention because it can cause severe damage and injury to his eyes. *Id*. He asserts that ankylosing spondylitis also causes him to have severe pain throughout his body. *Id*. 17-19. To help him with his pain, a rheumatologist prescribed a treatment plan, which requires a monthly injection and a prescription strength nonsteroidal anti-inflammatory medication. *Id*. at 17. Dodd represents that Naproxen is the only effective medication that controls his pain and he has a lifetime prescription for that medication. *Id*. He states he was incarcerated in 1997 and his prison medical record documents his numerous bouts of iritis as well as his severe pain stemming from his condition. *Id*. at 11-13.

Dodd first asserts that, on March 9, 2018, Dr. Andrew Liaw, one of the prison's doctors, reduced his Naproxen prescription from two pills per day to 28 pills every 60 days. ECF 59-1 at 17. He states Dr. Liaw next discontinued his Naproxen prescription and prescribed Mobic, which is a medication that has not been effective in controlling his pain. *Id*. at 17-18. Dodd asserts that Dr. Liaw then allowed the Mobic prescription to lapse even though Dr. Liaw neither examined him nor met with him to discuss his ankylosing spondylitis and pain associated with his condition. *Id*. at 18. Furthermore, he states that, without his medication, he experiences crippling pain to the point where he was unable to stand up straight, walk, or even breathe, because ankylosing spondylitis makes it feel as though his "ribs are fractured in hundreds of places." *Id*.

On August 24, 2018, Dodd asserts he submitted a healthcare request form to the medical unit because he was having another episode of iritis. ECF 59-1 at 11. He states

2

he wrote "Chronic Care Issue" at the top of his request to put the medical staff on notice that his condition was not new, and his medical record would provide his history along with the proper treatment. *Id*. Dodd asserts that Nurse Katherin Hutchinson returned the healthcare request form to him and told him to resubmit a request without "Chronic Care" written on the form so that a co-payment could be charged. *Id*. at 11-12. Dodd immediately submitted a second healthcare request form and noted on the form that his eye condition needed to be addressed in a timely manner. *Id*. at 12. However, after he submitted his second request, he contends nothing was done and he never heard anything from Nurse Hutchinson or the medical staff. *Id*.

On September 5, 2018, Dodd spoke with a nurse about his iritis. ECF 59-1 at 12. The nurse made a note of his condition in his medical record and contacted the urgent care staff. *Id*. Because he did not receive prompt care, Dodd called his family and they, in turn, called the prison. *Id*. Shortly thereafter, Dodd was contacted by medical staff and asked to fill out a healthcare request form. *Id*. After evaluating Dodd's eye, Nurse Hutchinson prescribed a medication for pink eye even though his medical records documented the multiple bouts of iritis and severe pain associated with his ankylosing spondylitis. *Id*.

About ten days later, on September 16, 2018, Dodd submitted another healthcare request form because the condition of his eye had not improved, the medication was not helping him, and the inflammation had spread to his other eye. ECF 59-1 at 12-13. On September 18, 2018, a correctional officer, who observed the severity of Dodd's iritis, notified the medical staff. *Id*. at 13. Dodd was then sent to the medical unit where Dr.

3

James Jackson, a prison doctor, advised Nurse Dorothy M. Livers by phone to prescribe artificial tears for Dodd's eye inflammation. *Id.* at 13-14. Nurse Livers gave him a bottle of artificial tears, which ultimately did not help his eye inflammation. *Id.* at 14.

Because his iris was beginning to turn white, Dodd called his family, who then contacted the Indiana Department of Correction (IDOC) office in Indianapolis to report that Dodd was not getting the medical care he needed for his iritis. ECF 59-1 at 13. The IDOC office in turn contacted Wexford of Indiana. *Id.* On September 20, 2018, Dodd was again taken to the medical unit where, after reviewing his medical history, the medical staff prescribed the appropriate eye drops for his eye inflammation. *Id.*

On September 25, 2018, Dodd had a follow-up visit with the prison's medical staff. ECF 59-1 at 13. Dodd claims, however, at this point in time, his eye had worsened and was in bad shape because there had been such a delay in properly treating his condition. *Id.* The medical staff contacted Dr. Jackson, but he refused to treat Dodd. *Id.* Instead, Dodd was placed on a list to see the prison's eye doctor. *Id.*

Several days later, on October 4, 2018, Dodd had another follow-up visit with the medical staff. ECF 59-1 at 13-14. Dodd states that his eye would no longer react to light and he was going blind. *Id.* at 14. He was placed on an aggressive dose of steroids and a nurse contacted Dr. Jackson by phone. *Id.* Dodd states that, although the nurse told Dr. Jackson his eye would no longer react to light, Dr. Jackson still refused to walk down a flight of stairs to examine his eye and told the nurse that he could wait until after the eye doctor returned from vacation. *Id.*

4

Dodd next asserts that, in October and November 2018, he sent four healthcare request forms to the medical staff and also called for a medical emergency because he was suffering from severe pain stemming from his ankylosing spondylitis. ECF 59-1 at 18. At the time, he was not being given Naproxen and one of his monthly injections was late. *Id*. However, Dodd represents that the medical staff refused to treat him or even talk with him. *Id*. He also claims that he was told he needed to order Naproxen from the commissary without considering if he could afford to pay for it. *Id*. at 20. Dodd states he was also told that Wexford ordered the medication for him, but he never received it. *Id*.

As a final matter, Dodd states that Wexford, Dr. Jackson, and Nurse Livers have also ignored his serious medical needs by taking away his antacid medication, Pepcid, which he needs to control his heartburn. ECF 59-1 at 19-20. He explains that the decades of having to take prescription nonsteroidal anti-inflammatory medications to treat his ankylosing spondylitis has caused him to have severe stomach problems. *Id*. However, Dodd asserts that these defendants refused to treat his stomach problems and compounded his problems by prescribing medication that has worsened his stomach condition. *Id*. Dodd states he is in pain most of the time and has requested a prescription for Pepcid. *Id*. But instead of prescribing the medication, the medical staff has told him to stop ordering foods from the commissary that cause stomach issues. *Id*. at 19-20.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was

5

objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). However, "[n]egligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to show that a defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Even incompetence does not state a claim of deliberate indifference. *See Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004); *Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010). However, a delay in

6

providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

Accepting Dodd's allegations as true and giving him the benefit of the inferences to which he is entitled, as I must at this stage of the proceedings, he has alleged facts from which it can be inferred that Dr. Liaw was deliberately indifferent to Dodd's serious medical needs by refusing to prescribe appropriate medication for Dodd's pain associated with his ankylosing spondylitis. Dodd has also alleged facts from which it can be inferred that Dr. Jackson was deliberately indifferent to his serious medical needs by refusing to provide him with appropriate medical care for his iritis and his pain associated with his ankylosing spondylitis.

With respect to Nurse Hutchinson and Nurse Livers, Dodd asserts they also violated his Eighth Amendment rights by refusing to properly treat his ankylosing spondylitis. ECF 59-1 at 11-12, 20, 26. Here, he asserts that Nurse Hutchinson failed to process his healthcare request forms and respond to his urgent needs for treatment for his iritis. *Id.* at 26. He claims she ignored his medical history and prescribed medication to treat pink eye, which lead to eye damage and pain. *Id*. He further asserts that Nurse Livers delayed proper treatment by prescribing artificial tears and refusing to prescribe Pepcid to treat his heartburn. *Id.* at 13-14, 26. While additional fact finding may reveal that these were simply errors in medical judgment, giving Dodd the benefit of the inferences to which he is entitled at this stage, I find that Dodd has stated Eighth Amendment claims against Nurse Hutchinson and Nurse Livers.

7

Dodd has also sued Wexford of Indiana. ECF 59-1 at 15, 24-25. He alleges that Wexford, as the private company that provides medical care to inmates, encourages its medical staff to delay and deny necessary medical care. *Id.* A private company may be held liable for constitutional violations when it performs a state function. *West v. Atkins*, 487 U.S. 42 (1988). Dodd has alleged that, consistent with Wexford's custom or policy of "denying or significantly delaying proper treatment for serious medical issues," he was denied appropriate care for his iritis and ankylosing spondylitis. *Id.* at 15. He explains that Wexford refused to consider his medical history and prescribe the medications he needed to treat his iritis and pain. *Id.* at 24-25. Thus, according to Dodd, his eyesight has been damaged and he has been subjected to needless amounts of pain because Wexford did not provide him with proper medical care. *Id.* I find that Dodd has stated a claim against Wexford.

Dodd next asserts a state law claim against Wexford's medical staff. ECF 59-1 at 20-21, 29-30. He claims the medical staff falsified state documents by making fraudulent notations in his medical records. *Id.* at 21. Here, he states that some of his healthcare request forms have been falsified because they indicate he had been "seen" or treated when, in fact, he never received any medical treatment. *Id.* Under the Indiana Tort Claims Act, a tort claim against a political subdivision is barred unless notice is filed with the governing body of the political subdivision and its risk management commission within 180 days of the loss. *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992); Ind. Code § 34-13-3-8. The notice requirement applies not only to political subdivisions but also to employees of political subdivisions as well. *Id.*

However, Dodd's amended complaint does not include any allegations that he complied with the notice requirements of the Indiana Tort Claims Act. Therefore, his state law claim will be dismissed.

Dodd also alleges that Wexford retaliated against him for filing this lawsuit. ECF 59-1 at 21-22. Here, he alleges that Wexford denied his request to participate in the prison's Recovery While Incarcerated ("RWI") program even though his background qualified him for participation in this program. *Id*. "To prevail on his First Amendment retaliation claim, [Dodd] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Because Dodd has not alleged any facts to suggest there is a link between filing this lawsuit and Wexford's decision not to allow him to participate in the RWI program, he cannot proceed on his retaliation claim.

Dodd has further asserted a breach of contract claim. ECF 59-1 at 28-29. He alleges Wexford breached its contract with the IDOC because Wexford failed to train its medical staff on how to identify and respond to medical emergencies.[1] *Id*. Dodd also claims that he is a third-party beneficiary to the contract because the contract solely

---

[1] To the extent Dodd may be attempting to assert a "failure to train" claim against Wexford, "in the Eighth Amendment context, such claims may only be maintained against a municipality." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994). Wexford is not a municipality. ECF 59-1 at 24.

9

benefits him and other inmates. *Id*. Dodd further explains that Wexford has breached its duty to provide him with adequate medical care. *Id*. While I have some doubt about Dodd's ability to demonstrate that he is an intended beneficiary of the contract, I will, at this juncture, permit the claim to proceed. *See Harper v. Corizon Health Inc.*, No. 2:17-CV-228-JMS-DLP, 2018 WL 6019595, at *8-9 (S.D. Ind. Nov. 16, 2018) (dismissing a breach of contract claim against Corizon on summary judgment because the plaintiff did not demonstrate that he was a third-party beneficiary of the contract between Corizon and the IDOC).

As a final matter, Dodd has sued Dr. Wilkinson, a prison dentist. ECF 59-1 at 15-17. He asserts that Dr. Wilkinson was deliberately indifferent to his serious dental needs because he had to wait more than six months to have a painful tooth extracted. *Id*. at 15. Dodd reports that he filled out many healthcare request forms asking for treatment for his multiple dental needs, but he waited months to receive treatment. However, Dodd's dental claims are unrelated to his claims against the defendants in this case. Therefore, Dodd cannot proceed on his claim against Dr. Wilkinson because it is unrelated to the claims on which he is currently proceeding in this lawsuit. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits[.]"). If Dodd seeks legal recourse against Dr. Wilkinson, the proper course is to file another lawsuit.

    **ACCORDINGLY**, the court:

    (1) GRANTS the motion for leave to file an amended complaint (ECF 59);

    (2) DIRECTS the clerk to separately docket the amended complaint (ECF 59-1);

(3) LIFTS the stay in this case;

(4) GRANTS Richard Dodd leave to proceed against Dr. Andrew Liaw in his individual capacity for compensatory and punitive damages for deliberate indifference to his serious medical need for treatment for his pain associated with his ankylosing spondylitis, in violation of the Eighth Amendment;

(5) GRANTS Richard Dodd leave to proceed against Dr. James Jackson in his individual capacity for compensatory and punitive damages for deliberate indifference to his serious medical need for treatment for his iritis and his pain associated with his ankylosing spondylitis, in violation of the Eighth Amendment;

(6) GRANTS Richard Dodd leave to proceed against Nurse Katherin Hutchinson in her individual capacity for compensatory and punitive damages for deliberate indifference to his serious medical need for treatment for his iritis associated with his ankylosing spondylitis, in violation of the Eighth Amendment;

(7) GRANTS Richard Dodd leave to proceed against Nurse Dorothy M. Livers in her individual capacity for compensatory and punitive damages for deliberate indifference to his serious medical need for treatment for his iritis and his pain associated with his ankylosing spondylitis, in violation of the Eighth Amendment;

(8) GRANTS Richard Dodd leave to proceed against Wexford of Indiana for compensatory and punitive damages for following a custom or policy of denying necessary medical care, resulting in him receiving inadequate care for his iritis and ankylosing spondylitis;

(9) GRANTS Richard Dodd leave to proceed against Wexford of Indiana for injunctive relief to require it to stop following a policy of delaying necessary medical care, in violation of the Eighth Amendment;

(10) GRANTS Richard Dodd leave to proceed against Wexford of Indiana for compensatory damages for breaching its contract with the IDOC;

(11) DISMISSES Dr. Wilkinson;

(12) DISMISSES all other claims;

(13) DIRECTS the clerk to request Waiver of service from (and if necessary, the United States Marshals Service to serve process on) Dr. Andrew Liaw, Dr. James Jackson, Nurse Katherin Hutchinson, and Nurse Dorothy M. Livers at Wexford of Indiana, LLC, 9245 N. Meridian Street, Indianapolis, IN 46260 with a copy of this order and the amended complaint, pursuant to 28 U.S.C. § 1915(d);

(14) ORDERS Wexford of Indiana, LLC to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant that does not waive service, if it has such information; and

(15) ORDERS pursuant to 42 U.S.C. § 1997e(g)(2), that Dr. Andrew Liaw, Dr. James Jackson, Nurse Katherin Hutchinson, Nurse Dorothy M. Livers, and Wexford of Indiana respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on April 27, 2021.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT